# United States District Court
# Central District of California

UNITED STATES OF AMERICA vs.    Docket No.    CR16-646-SVW

**Defendant**    Edwina Cailipan    Social Security No. 5 6 0 5
akas:    None    (Last 4 digits)

## JUDGMENT AND PROBATION/COMMITMENT ORDER

|  | MONTH | DAY | YEAR |
|---|---|---|---|
| In the presence of the attorney for the government, the defendant appeared in person on this date. | 05 | 01 | 2017 |

**COUNSEL**    Jerry B. Marshak and Richard A. Moss, Retained
(Name of Counsel)

**PLEA**    [X] **GUILTY**, and the court being satisfied that there is a factual basis for the plea.    [ ] **NOLO CONTENDERE**    [ ] **NOT GUILTY**

**FINDING**    There being a finding/verdict of **GUILTY**, defendant has been convicted as charged of the offense(s) of:
Payment of Illegal Remunerations for Patient Referrals in violation of 42 U.S.C. §1320a-7b(b)(2)(A) as charged in Count 1 of the Information.

**JUDGMENT AND PROB/ COMM ORDER**    The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of:

## ONE (1) YEAR AND ONE (1) DAY

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of two years under the following terms and conditions:

1. The defendant shall comply with the rules and regulations of the United States Probation Office, General Order 05-02.

2. During the period of community supervision, the defendant shall pay the special assessment and restitution in accordance with this judgment's orders pertaining to such payment.

3. The defendant shall not engage, as whole or partial owner, employee or otherwise, in any business involving Medicare services without the express approval of the Probation Officer prior to engaging in such employment. Further, the defendant shall provide the Probation Officer with access to any and all business records, client lists, and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer.

4. The defendant shall apply all monies received from income tax refunds to the outstanding Court-ordered financial obligation. In addition, the defendant shall apply all monies received from lottery winnings, inheritance, judgments and any anticipated or unexpected financial gains to the outstanding Court-ordered financial obligation.

5. The defendant shall cooperate in the collection of a DNA sample from the defendant.

　　　The drug testing condition mandated by statute is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

　　　It is ordered that the defendant shall pay restitution in the total amount of $370,533 pursuant to 18 U.S.C. §3663.

　　　The amount of restitution ordered shall be paid as follows:

| Victim | Amount |
|---|---|
| Medicare | $370,533 |

　　　In light of the Court's order regarding fraudulent transfer, Defendant's restitution payment shall be paid in full within 90 days.

　　　It is ordered that the defendant shall pay to the United States a special assessment of $100.

　　　It is further ordered that the defendant surrender herself to the institution designated by the Bureau of Prisons on or before 12 noon, June 30, 2017. In the absence of such designation, the defendant shall report on or before the same date and time, to the United States Marshal located at:

Roybal Federal Building
255 East Temple Street
Los Angeles, California 90012

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

9/6/17
Date

Stephen V. Wilson, U. S. District Judge

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

9/6/17
Filed Date

1111

Clerk, U.S. District Court

By Gabriela Garcia, Deputy Clerk
Paul M. Cruz

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

## STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

1. The defendant shall not commit another Federal, state or local crime;
2. the defendant shall not leave the judicial district without the written permission of the court or probation officer;
3. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5. the defendant shall support his or her dependents and meet other family responsibilities;
6. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7. the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;
8. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;
10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;
15. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours;
16. and, <u>for felony cases only</u>: not possess a firearm, destructive device, or any other dangerous weapon.

The defendant will also comply with the following special conditions pursuant to General Order 01-05 (set forth below).

## STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant shall pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment pursuant to 18 U.S.C. §3612(f)(1). Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g). Interest and penalties pertaining to restitution, however, are not applicable for offenses completed prior to April 24, 1996.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant shall pay the balance as directed by the United States Attorney's Office. 18 U.S.C. §3613.

The defendant shall notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. §3612(b)(1)(F).

The defendant shall notify the Court through the Probation Office, and notify the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. §3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution-pursuant to 18 U.S.C. §3664(k). See also 18 U.S.C. §3572(d)(3) and for probation 18 U.S.C. §3563(a)(7).

Payments shall be applied in the following order:

1. Special assessments pursuant to 18 U.S.C. §3013;
2. Restitution, in this sequence (pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid):
Non-federal victims (individual and corporate),
Providers of compensation to non-federal victims,
The United States as victim;
3. Fine;
4. Community restitution, pursuant to 18 U.S.C. §3663(c); and
5. Other penalties and costs.

## SPECIAL CONDITIONS FOR PROBATION AND SUPERVISED RELEASE

As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure; and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant. In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the Probation Officer.

The defendant shall maintain one personal checking account. All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses. Records of all other bank accounts, including any business accounts, shall be disclosed to the Probation Officer upon request.

The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

# RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____
Defendant noted on appeal on _____
Defendant released on _____
Mandate issued on _____
Defendant's appeal determined on _____
Defendant delivered on _____ to _____
   at _____
the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

By _____
      Date                  Deputy Marshal

# CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____
   Filed Date            Deputy Clerk

---

# FOR U.S. PROBATION OFFICE USE ONLY

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____        _____
           Defendant                                          Date

_____        _____
U. S. Probation Officer/Designated Witness        Date

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 2:16-cr-00646-SVW/2:17-cv-03618-SVW-MRW | Date September 5, 2017 |

Present: The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

Interpreter

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Edwina Cailapan | | X | | Jerry Marshak | X | | X |
| | | | X | Richard Moss | X | | X |

**Proceedings:** IN CHAMBERS ORDER: Findings of the Court Pursuantan Action to Set Aside a Fraudulent Conveyance of Real Property

On June 26, 2014, the United States interviewed Defendant Edwina Cailipan in connection with the criminal investigation of CareYes Hospice, Inc., owned by Defendant. Stipulation of Facts re: Restitution Payment Order ("Stip") Dkt. 60 ¶ 1. Two years later, between May and July 2016, the United States and Defendant's counsel engaged in communications about a plea agreement. *Id.* at ¶ 2. On September 1, 2016, Defendant signed a plea agreement, which the United States filed along with a information against the Defendant on September 12, 2016. *Id.* at ¶¶ 3-4. On December 5, 2016, Defendant pled guilty to the sole count regarding illegal renumerations for health care referrals, in violation of 42 U.S.C. § 132a-7b(b)(2)(A). *Id.* at ¶ 5.

The current matter involves the time period between 2014 and 2016 and Defendant's transfer of her real property into two successive trusts. The issue is whether the transfers constitute fraudulent transfers of real property under § 3304(b)(1)(A)-(B). The Court's determination regarding whether Defendant owns the three properties will decide whether the Court should order immediate payment of restitution. Accordingly, the Court held a hearing on August 10, 2017, at which time neither party elected to cross-examine any of the declarants. Dkt. 61.

## I. Relevant Facts

The transfers involve three properties known as the Summerwood Property, the Highcrest Property, and the Prospectors Property. *Id.* at ¶¶ 8-12 Defendant is married to Pastor Cailipan and was married to him during the purchase of all three properties. Christina Cailipan is one of the adult children of the Cailipans. *Id.* at ¶¶ 6-7.

The Cailipans bought the Summerwood Property in 2003. *Id.* at ¶ 8. They then purchased the Highcrest Property and the Prospectors Property in 2005. *Id.* at ¶¶ 9-10. In October 2014, approximately four months after the government

Initials of Deputy Clerk     PMC

cc: USM
    PSA

notified Defendant that she was under investigation, the Cailipans created the first, revocable trust ("2014 Trust"). *Id.* at ¶¶ 11-17. At the same time, the Cailipans executed three grant deeds conveying their interests in the Summerwood, Highcrest, and Prospectors properties to the 2014 Trust. *Id.* The transfers were bona fide gifts for which the transferor received nothing in return. *Id.* The Cailipans were both the trustors and the trustees of the 2014 Trust. *Id.*

In July 2016, after Defendant's counsel had engaged in plea negotiations with the government, the Cailipans executed a document creating the Saint Anthony's Irrevocable Living Trust ("2016 Irrevocable Trust"). *Id.* at ¶¶ 19-25. They named their daughter, Christina Cailipan as the trustee and named Christina Cailipan, their son, and four grandchildren as the beneficiaries of the trust. *Id.* At the same time, the Cailipans executed three grant deeds conveying the three 2014 Trust properties to the 2016 Irrevocable Trust. *Id.* The transfers were bona fide gifts for which the transferor received nothing in return. *Id.*

The Cailipans have continued to reside at the Highcrest property for over 12 years. *Id.* at ¶ 26. The current residents at the Summerwood Property have lived there since 2008 and untillast month, made monthly payments to a Wells Fargo account held by Defendant Edwina Cailipan. *Id.* at ¶¶ 27-30. These payments to Defendant's account continued for almost one year after the 2016 Trust named Christina Cailipan as trustee for the three properties. The current residents of the Prospectors Property have lived there since 2010 and until last month, made monthly payments to the same Wells Fargo account. *Id.* The tenants now pay rent to the 2016 Irrevocable Trust. *Id.* Currently, the Cailipans make monthly payments on the mortgage loans secured by the Highcrest and Summerwood properties. *Id.*

The Cailipans claim that the two transfers were related to an estate plan created long before any criminal investigation against Defendant Edwina Cailipan. Declaration of Edwina Cailipan ("Edwina Decl.") Dkt. 57. at ¶ 9. The Cailipans claimed that they planned to retire in the Phillippines. *Id.* The first trust was created through papers they found on an online service called "LegalZoom." *Id.* at ¶ 10. Then, in 2016, the Cailipans consulted an attorney when Mr. Cailipan's retirement seemed more likely. *Id.* at ¶ 12. They changed the initial revocable trust to an irrevocable trust to "benefit [the] children and grandchildren without any future involvement from [the Cailipans]" after retirement. *Id.* The Cailipans claims that were it not for the criminal case against Edwina Cailipan, the tenant rent transfer and other formalities would have occurred sooner and the Cailipans would already have moved to the Phillipines. *Id.* at ¶¶ 12-14. The government argues that the transfers were part of a scheme to avoid Defendant's impending restitution payments to the government.

## II. Burden

The United States has alleged six claims of relief (three properties transferred twice) under 28 U.S.C. § 3304(b), the Federal Debt Collection Procedures Act of 1990 (FDCPA), which provides:

(b) Transfers without regard to date of judgment.--
    (1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation--
        (A) with actual intent to hinder, delay, or defraud a creditor; or
        (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor--
            (i) was engaged or was about to engage in a business or a transaction for which the

Initials of Deputy Clerk     PMC

    remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(2) In determining actual intent under paragraph (1), consideration may be given, among other factors, to whether--

    (A) the transfer or obligation was to an insider;
    (B) the debtor retained possession or control of the property transferred after the transfer;
    (C) the transfer or obligation was disclosed or concealed;
    (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (E) the transfer was of substantially all the debtor's assets;
    (F) the debtor absconded;
    (G) the debtor removed or concealed assets;
    (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
    (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
    (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b). The government has charged Defendant with three counts of actual fraudulent transfer under § 3304(b)(1)(A) and three counts of constructive fraudulent transfer under § 3304(b)(1)(B).

  The FDCPA does not specify which burden of proof the government bears in showing Defendant made a fraudulent transfer under § 3304(b). The default position in civil cases is that the government must prove its case by a preponderance of the evidence. But § 3308 of the FDCPA indicates otherwise. It states that "[e]xcept as provided in this subchapter, the principles of law and equity, including ... the law relating to ... fraud, ... shall apply to actions and proceedings under this subchapter." 28 U.S.C. § 3308. Plaintiffs are required to prove "common law fraud claims by clear and convincing evidence." *Wilcox v. First Interstate Bank, N.A.*, 815 F.2d 522, 531 (9th Cir. 1987); *See also, Joseph R. Banister, Petitioner-Appellant v. Commissioner of Internal Revenue, Respondent-Appellee*, 2016-2 U.S. Tax Cas. (CCH) P50,484 (9th Cir. Nov. 21, 2016). In proving fraudulent transfer under the FDCPA, the federal government's burden of proof is clear and convincing evidence. *See e.g., United States v. Billheimer*, 197 F. Supp. 2d 1051, 1057, 2002 U.S. Dist. LEXIS 7703, *16 fn. 6 (S.D. Ohio Mar. 21, 2002)(one of the few federal cases specifically considering the burden of proof under the FDCPA).

  While the Ninth Circuit has not addressed this issue specifically in the FDCPA context, proof of fraud is generally analyzed under this heightened standard. As the Ninth Circuit has said in civil fraud cases involving tax evasion, "the Government has the burden of proof to establish the elements of the civil fraud penalty by clear and convincing evidence." *See Lollis v. Commissioner*, 595 F. 2d 1189, 1192 (9th Cir. 1979); *Powell v. Granquist*, 252 F. 2d 56, 61 (9th Cir. 1958); *see also Cal. State Bd. of Equalization v. Renovizor's Inc. (In re Renovizor's, Inc.)*, 282 F.3d 1233, 1240-1241 (9th Cir. 2002) (holding that "[g]iven the uncertainty in California law, we are ultimately persuaded that ... this issue is best made to conform with the weight of authority in other jurisdictions requiring clear and convincing evidence to show civil tax fraud. We conclude that this well-beaten path 'reflects the weight of the private and public interest affected' and a 'societal judgment about how the risk of error should be distributed.'"). The badges of fraud, seen in § 3304(b)(2), are

                  Initials of Deputy Clerk   PMC

cc: USM
  PSA

culled from common law claims of fraud, which require that evidence be clear, unequivocal, and convincing. *See, e.g., United States v. Leggett*, 292 F.2d 423, 426-27 (6th Cir. 1961). "More is required than the mere weight or preponderance of evidence." *Lackawanna Pants Mfg. Co. v. Wiseman*, 133 F.2d 482, 486 (6th Cir. 1943). Therefore, the Court will analyze the evidence provided under a clear and convincing standard.

### III.    Discussion

The government has met the burden of clear and convincing evidence in this case. The timeline of the events surrounding the transfers combined with the circumstantial factors–as enumerated in § 3304(b)(2) above–provide strong support for the government's position. The only rebuttal provided by Defendant comes in the form of self-serving declarations without independent corroboration.

This case is similar to *United States v. Sherrill*, 626 F Supp 2d 1267 (M.D. Ga 2009). In *Sherrill*, a husband transferred his interest in property to his wife after he became aware of an SEC investigation. The court held that the transfers were fraudulent based on the disproportionate consideration for the transfers.[1] *Id.* at 1276. Defendant alleged that the transfers were part of an estate plan, just as the Cailipans allege, thus attempting to justify the low amount of consideration. *Id.* at 1271. The court in *Sherrill* found that the testimony of the Defendant and his wife lacked credibility. *Id.* The Court here finds the same.[2]

Defendant's conviction for fraud already casts doubt on the declaration she provided to the Court. Defendant has a history of fraudulent activity. Defendant continued to benefit from the rents on the relevant properties even after the apparent transfer of the properties into an irrevocable trust. Pastor Cailipan, Defendant's husband, also provided a declaration in this case; however, Pastor Cailipan also has a vested interest in the properties and would benefit from the properties remaining with his family. Christina Cailipan's declaration suffers from similar inadequacies. If this Court were to find the transfer was not fraudulent, Christina Cailipan would be the trustee of the irrevocable trust as well as a beneficiary of that trust.

The declarations are dubious on their faces and Defendant provides no other corroboration from a disinterested party. If the Defendant did in fact transfer these properties as part of an estate plan, at minimum there ought to be some other corroboration of her intent to do so. While Defendant claims she and her husband hired an attorney to draft the irrevocable trust document for an estate plan, the Court lacks corroboration from this attorney or from any other party to confirm the existence of the estate plan.

Furthermore, in the face of these declarations, the government asks the Court to consider the factors enumerated

---

[1] While the consideration in *Sherrill* was disproportionate to the value of the property, the consideration in the case at hand is non-existent.

[2] While the Court did not have an opportunity to assess the demeanor of the witnesses, the Court can and certainly did consider many of the factors a jury would usually consider. For example, the Court has considered the "witness's interest in the outcome of the case and any bias or prejudice, whether other evidence contradicted the witness's testimony," and "the reasonableness of the witness's testimony in light of all the evidence." Ninth Circuit Manual of Model Jury Instructions Civil, Instruction 1.11. The Court also considered "evidence that a witness . . . has been convicted of a crime . . . " in making credibility determinations in this case.

|  | : |
|---|---|
| Initials of Deputy Clerk | PMC |

cc:   USM
       PSA

in § 3304(b)(2), factors that help illuminate what circumstantial evidence is likely to indicate actual intent of a fraudulent transfer. 28 U.S.C. § 3304(b)(2). Out of the eleven possible factors, seven clearly lean towards finding that the Defendant fraudulently transferred her properties, seen as follows:

- The transfer was to an insider, at first herself and her husband and then to her daughter (factor one);
- Before either set of transfers was made, Defendant was at least threatened with suit (factor four);
- The transfers were of substantially all the Defendant's assets (factor five);
- The value of consideration Defendant received was nonexistent, let alone equivalent in any manner (factor eight);
- The Defendant became insolvent shortly after the obligation was incurred, as evidenced by her inability to fully pay the restitution payments (factor nine);
- The transfers occurred shortly before a substantial debt was incurred (factor ten); and,
- Most importantly the Defendant retained possession and control of the properties for almost a year after the trusts were created, only handing over control of the properties after the proceedings had started in this very matter (factor two).

*Id.* Out of the four factors left, some of the factors simply do not apply in the case at hand. Furthermore, the factors are not an exhaustive checklist where every single factor must be met. *Id.* "Because direct evidence of fraud is often lacking, the badges of fraud allow the fact finder to infer fraudulent intent from other proven facts." *United States v. Forbes*, 740 F. Supp. 2d 326, 332 (D. Conn. Sept. 30, 2010). Here, the factors help provide clear and convincing evidence of Defendant's intent. When taken along with the timeline, the lack of documentation, and the lack of independent corroboration–corroboration that would likely be available in such a case–the Court finds that actual intent does exist in proving a fraudulent transfer.

### IV. Conclusion

The Court finds that each of the transfers violated § 3304(b)(1)(A) in that the prospect of Defendant's debt arose before the transfer was made and she made the transfer with actual intent to hinder, delay, or defraud the creditor, the United States. Accordingly, the Court voids and sets aside all six transfers and enjoins any further transfers of the three parties until Defendant satisfies her restitution debt. Because the transfers are already void under § 3304(b)(1)(A), the Court does not need to consider the government's claims under § 3304(b)(1)(B).

For good cause shown at the evidentiary hearing conducted by the Court, it is hereby ordered that Defendant Edwina Cailipan's surrender date be extended to September 7, 2017. The Court will enter a separate judgment of conviction which will reflect that in light of this order, the restitution payment shall be paid in full within 90 days.

Initials of Deputy Clerk     PMC

cc: USM
    PSA